Curia, per Savage, Ch. J.
Law sued Merrills in the , TIT „ 'Ll common pleas on a note dated June 29, 1822, payable to Sally M. Jones or bearer, and by her endorsed to the plaintiff below. The defence was usury. The first witness, Wilson, testified as stated in the bill of exceptions, that in the summer of 1822, before Miss Jones, the payee, was married, he heard her say she had lent money to Merrills, for which she received about double interest; the witness understood 12 per cent. She showed this note, and said she was to have nearly, double interest. AlfredWhite testified, that before the loan was made, Miss Jones told him that Merrills was to give 12 per cent. This witness was not on good terms with *Miss Jones. John F. Merrills saw the defendant below pay Miss Jones $10 extra interest in December, 1822.
On the part of the plaintiff below, it was proved by Darrow that the defendant below said the note was given for the amount received, and no more.
The judge charged the jury," that if, at the making of the loan, it was agreed between Miss Jones and the defendant below, that he should pay more than 7 per cent, the defendant below would be entitled to their verdict; but if they believed from the testimony, that the note was given for the amount of money advanced, and the agreement to pay extra interest was made subsequently, with a view to obtain further indulgence, such agreement would not affect the note, and the plaintiff should recover.
In charging the jury, the judge recapitulated the testimony. The counsel for the defendant below insisted that the court had misunderstood the testimony of Wilson ; and that he testified that Miss Jones stated to him that, when the money was loaned and the note given, it was agreed between her and Merrills that he should pay 12 per cent, interest; and insisted on" the court’s calling Wilson to ascertain whether he had so testified or not. The court decided that it was a matter of discretion whether to permit a witness to be interrogated after the cause was submitted to the jury, and refused to re-examine Wilson. The defendant’s counsel excepted, and the jury found for *70 the plaintiff below.. A ease was made,, and on the argn merit of the motion for. a new trial', an affidavit of Wilson was produced, stating that he had sworn as, the defendant’s counsel had stated his. testimony at the time of the. charge. The court refused a new trial, .
An objection has been taken to a clerical error in the record, but I am of opinion the court erred in the merits. Usury is, commonly an unconscionable defence, hut it. is a legal one. ;: and if proved, courts must sustain it., Us.ury was, in this ease, clearly proved by the testimony of Alfred White; but it is supposed that this was. answered by the testimony Of Harrow. There is no contradiction between them,. Usury consists in the corrupt agreement of the parties, by which more than, lawful interest i.s to- be paid. White *swears to the agreement, and that the note was given for the amount loaned. : Barrow does not disprove the agreement, He corroborates White as far as he goes. The defendant confessed that, the note was given for no more money than he received. So. says White. The defendant below said to Barrow that, he could prove he had paid mere than 7 per cent. That fact does not of itself prove, usury : but it. certainly does not disprove it. There is. nothing t.o discredit White but the fact of bad, terms between him and Miss Jones; and. that, should have been weighed by the jury in ascertaining what, credit was due to him. Wilson’s testimony, as stated at first, strongly corroborates. White. It is this: that in the summer, when the note was: given, Miss Jones showed him the note, said she had made a good bargain, and was to, have nearly double interest. The court told, the jury that if this testimony had relation to a subsequent contract to procure forbearance, it was not usurious. This, was. certainly correct. The. note, it is true was payable in ten days, and therefore due in July, and possibly before this conversation. But when Wilson’s testimony- is considered as presented to the court on the application for a new trial, it rebuts any such presumption. He swore then that Miss Jones told him that such was, the contract when she lent the money. If this, is to be. considered his testimony before the jury, it *71 was a clear case of usury; if, as stated in the bill of excepfcions, the fair presumption is, that Miss Jones spoke of the contract of the loan, and not of subsequent forbearance. Not one word had been said of such forbearance, or of any agreement but the loan itself.
The next question is as to the correctness of the court in refusing to re-examine the witness, Wilson. It is certainly true, that there is, and must be, a discretion in the court as to the examination of witnesses after both parties have summed up to the jury. It is not uncommon for witnesses to be re-examined at the request of the jury, when any disagreement arises, after they have retired to consider of their verdict: and when counsel allege that the court has stated the testimony incorrectly to the jury, I should think it highly Miscreet in the court to ask the witness then in court whether they misunderstood it.
But it is said this court cannot control the discretion of the court below. Whether that proposition be true or not, depends I apprehend, on circumstances. If it be that discretion which is to be exercised according to law, then this court has power to interfere, and correct any error fallen into by the tribunal which acts at discretion. (Jac. L. D. tit. Discretion.) The discretion which a judge at the circuit, or a court of common pleas possesses, as to receiving testimony after the parties - have closed the evidence, has always been treated by this court as within their control. In the case of Alexander v. Byron, (2 John. Cas. 318,) an application was made for a new trial, because the judge had refused to receive a witness for the defendant, after the counsel had commenced summing up. This court said it was not matter of strict right with the party, but of discretion in the judge, according to circumstances. They then go into an examination of the circumstances, and conclude that the judge exercised a due discretion. In Mercer v. Sayre, (7 John. 306,) after the defendant’s counsel had summed up, and while the plaintiff’s counsel were summing up, the defendant’s counsel discovered some written evi dence which they wished to submit to the jury, and which the judge refused. On an application for a new trial, the *72 court said the evidence offered was material; that the radge. . , . , . , .. , . " ° had a discretion to admit the evidence, and it ought, m sound discretion, to have been received; and a new trial was granted on that ground. In Jackson v. Tallmage, (4 Cowen, 450,) a new trial was refused, this court remarking, that we could not say that the discretion of the judge was not properly exercised. All these were cases of admitting new witnesses, Or offers to introduce new testimony. Here it was proposed to ask a witness in court what he had already sworn. In my judgment, the exercise of a sound legal discretion required a re-examination of the witness. [1] But, independent of this ground, (which I think sufficient,) I am of opinion that the court should have charged the jury that the inference of law was, that the bargain spoken of by *Miss Jones to Wilson was the contract of loan. No other had been alluded to. I know this is a defence not favored, and the leaning of courts and juries is against it; but, so long as it is legal, we must take care and not lean too far. [2] The judgment must be reversed, and a venire de nove issued.
Rule accordingly.

 This decision was reversed in the Court of Errors. See S. C. 6 Wen 268. People v. Rector, 19 id. 569. Meakim v. Anderson, 11 Barb. 215

 But see S. C. 6 Wen. 268.